IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ARNIE MCNEELY, § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 3:14-CV-01035-L-BK |
| § | |
| CAROLYN COLVIN, § | |
| **Acting Commissioner of Social Security,** § | |
| § | |
| **Defendant.** § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The cause is now before the Court on the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 13, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 15, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND[1]

**A.     Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). In August 2011, Plaintiff filed for SSI, claiming that he was disabled due to diabetes, high blood pressure, and lower back pain. Doc. 11-6 at 2; Doc. 11-7 at 6. His application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C.

---

[1] The following background comes from the transcript of the administrative proceedings at Doc. 11.

§ 405(g).  Doc. 11-3 at 2-8; Doc. 11-3 at 44-51; Doc. 11-5 at 2; Doc. 11-5 at 12.

B.     Factual Background

At the time of the administrative hearing, Plaintiff was 55 years old with a high school education and past relevant work as a painter.  Doc. 11-3 at 51; Doc. 11-3 at 86.  In September 2011, consultative physician Dr. Manda Waldrep noted that while correctional facility records indicated that Plaintiff had been treated for lumbar strain in 2008, there was no evidence of an established onset of disability or functional limitations due to low back pain.[1]  Doc. 11-8 at 38. In December 2011, Plaintiff underwent a consultative examination by Dr. Anuradha Tavarekere. Doc. 11-8 at 65.  Plaintiff complained of diabetes, neuropathy of the hands, hypertension, and low back pain due to a car wreck and multiple work injuries.  Doc. 11 at 312.  Plaintiff averred that his back pain was sharp, intermittent, and non-radiating, and he got relief with over-the-counter medication.  Doc. 11-8 at 65.  Dr. Tavarekere noted that Plaintiff exhibited a normal gait and station with no ataxia, he was able to stand on his heels and toes, bend and get back up with no difficulty, partially squat with no difficulty, get on and off the examination room table, and he had a negative straight leg raise test.  Doc. 11-8 at 65.  Additionally, Dr. Tavarekere noted tenderness of Plaintiff's sacroiliac joints, a normal spinal exam, and a normal range of motion through all extremities.  Doc. 11-8 at 65-66.  His impression was that Plaintiff had type II diabetes, hypertension, hyperlipidemia, onychomycosis, and a history of depression.[2]  Doc. 11-8 at 66.

---

[1] The earliest month for which the Social Security Administration can make SSI payments is the month following the month in which the claimant filed his application.  20 C.F.R. § 416.335 (2014).  Thus, the relevant period in this case began on August 17, 2011, when Plaintiff filed his application.  The Court did not consider medical evidence prior to that date except as necessary for context.
[2] Onychomycosis is a "very common fungus infection of the nails, causing thickening, roughness, and splitting."  *Stedmans Medical Dictionary* (28th ed. 2014), available on Westlaw.

**C.     The ALJ's Findings**

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his claimed disability onset date. Doc. 11-3 at 46. At step two, the ALJ found that Plaintiff's major depressive disorder, schizoaffective disorder, antisocial personality traits, and "polysubstance dependence in remission" were severe impairments. Doc. 11-3 at 46. The ALJ noted several of Plaintiff's other medical issues, including his lumbar strain, but found that there was no indication from the medical evidence that any of those conditions "caused more than minimal impact on the claimant's work capability" and, as such, those impairments were not severe. Doc. 11-3 at 46. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal in severity any presumptively disabling impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Doc. 11-3 at 46-47. The ALJ proceeded to find that Plaintiff had the residual functional capacity to perform all exertional levels of work except that he needed to avoid exposure to hazardous machinery and unprotected heights and could not use ropes, ladders, or scaffolds. Doc. 11-3 at 47. The ALJ further limited Plaintiff to simple tasks in a routine work setting, with only occasional interaction with others that is superficial and incidental to the job, and determined that he should not work around crowds. Doc. 11-3 at 47. At step four, the ALJ found that Plaintiff could not perform his past relevant work as a painter. Doc. 11-3 at 50. However, the ALJ proceeded to step five and, based in part on the testimony of a vocational expert, found that Plaintiff could perform other work, such as a hand packager, warehouse worker, and hospital cleaner. Doc. 11-3 at 51. The ALJ therefore held that Plaintiff was not disabled. Doc. 11-3 at 51.

**D.     New Evidence Presented to the Appeals Council**

In June 2013, while Plaintiff's appeal was pending, he underwent an MRI of his lower back, the results of which he submitted to the Appeals Council. Doc. 11-11 at 53. The test revealed a broad 1-2mm disc bulge at L2-L3 and a broad 2mm protrusion at L3-4 with mild bilateral neural foraminal narrowing. Doc. 11-11 at 55. The study also showed a right posterolateral component at L4-5 causing mild thecal sac stenosis and moderate right neural foraminal narrowing. Doc. 11-11 at 55. At L5-S1, there was a partial disc desiccation and a broad 3-mm disc protrusion was noted. Doc. 11-11 at 55. The radiologist concluded that Plaintiff had facet joint effusions at L4-5 and L5-S2, indicative of acute facet joint irritation and lumbar facet syndrome. Doc. 11-11 at 56. The Appeals Council noted that the ALJ decided Plaintiff's case through March 2013, and the new medical records Plaintiff submitted concerned his condition at a later time and, thus, did not affect the decision about whether he had been disabled on or before March 2013. Doc. 11-3 at 3.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

### III. ARGUMENT AND ANALYSIS

Plaintiff argues that the decision denying him benefits must be reversed because although the ALJ recited the correct severity standard from *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), she actually applied the incorrect standard to Plaintiff's lumbar disorder in finding it to be non-severe. Doc. 14 at 5-6. Plaintiff claims that this harmed him because the ALJ excluded exertional limitations from her RFC finding, and the MRI study submitted to the Appeals Council confirms that he has lumbar facet syndrome which directs a finding of disability. Doc. 14 at 5, 8. Therefore, Plaintiff asserts it is conceivable that he would have been found disabled had the ALJ applied the correct legal standard. Doc. 14 at 5, 8-9. While the MRI post-dates the ALJ's decision, Plaintiff maintains that the ALJ's error nevertheless was not harmless because he alleged back complaints prior to the ALJ's decision and the MRI related to that impairment. Doc. 14 at 9.

Defendant responds that any *Stone* error the ALJ may have committed is immaterial because the ALJ's analysis proceeded past step two of the sequential evaluation process. Doc. 15 at 5-7. Further, Defendant asserts that Plaintiff's post-decision MRI does not warrant remand because although the MRI revealed evidence of lumbar facet syndrome, that diagnosis alone does not confer disability. Doc. 15 at 7. Rather, Plaintiff would have to show that the condition functionally impaired him to the extent that he cannot perform substantial gainful activity, but Plaintiff cited to no evidence of such limitations that exceed those the ALJ set forth in her RFC determination. Doc. 15 at 7.

Plaintiff replies that *Stone* error may be reversible even if the ALJ proceeds beyond step two of the sequential evaluation analysis. Doc. 16 at 2-3. Further, Plaintiff contends that it is not appropriate on appellate review for the Court to determine the effect of Plaintiff's lumbar facet

6

syndrome when the ALJ did not have the opportunity to do so. Doc. 16 at 3. In any event, Plaintiff points out that he did offer evidence of his exertional limitations by way of his testimony and treatment records. Doc. 16 at 4.

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A literal application of these regulations is inconsistent with the Act, however, because the definition includes fewer conditions than indicated by statute. See Stone, 752 F.2d at 1104-05. Therefore, the Court of Appeals for the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Id. at 1101, 1104-05. In other words, the Stone standard does not allow for any interference with the claimant's ability to work. Scroggins v. Astrue, 598 F.Supp.2d 800, 805 (N.D. Tex. 2009). The Stone court also held that it would assume that the ALJ applied the incorrect legal standard to the severity requirement unless the correct standard was set forth by reference to Stone or a similar opinion, or by an express statement that the court's construction of section 404.1520(c) was used. Stone, 752 F.2d at 1106. Nevertheless, Stone error may be harmless. Taylor v. Astrue, 706 F.3d 600, 603 (5th Cir. 2012) (holding that any error by the ALJ in not citing to Stone was harmless because it did not affect the claimant's substantial rights).

In the case at bar, the ALJ clearly committed a Stone error because she stated that Plaintiff's lumbar strain did not cause "more than minimal impact on [his] work capability" and thus was not severe. Doc. 11-3 at 46. This is the standard prohibited by Stone. See Middleton v. Colvin, No. No. 13-cv-2647-BH, 2014 WL 1158894, *4 (N.D. Tex. 2014) (Horan, M.J.) (finding

7

*Stone* error where the ALJ stated that "an impairment or combination of impairments is 'not severe' when medical or other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work"); *Hayes v. Commissioner of Social Sec. Admin.*, No. 11-cv-1998-L-BH, 2012 WL 4442412, *11 (N.D. Tex. 2012) (Stickney, M.J.) (holding that *Stone* provides no allowance for a minimal interference on a claimant's ability to work), *adopted by* 2012 WL 4442411 (N.D. Tex. 2012) (Lindsay, J.); *but cf.* *Sinayi v. Astrue*, No. 3:11-cv-2770-D, 2012 WL 3234414, *3 (N.D. Tex. 2012) (Fitzwater, C.J.) (finding appropriate under *Stone* the following standard: "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.").

In the past, *Stone* error would be grounds for automatic remand because it constituted a legal error. *See, e.g.*, *Scroggins*, 598 F.Supp.2d at 806-07. More recently, however, courts have not automatically remanded cases involving *Stone* error. *See, e.g.*, *Rivera v. Colvin*, No. 12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. 2013) (Fish, J.); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-6 (N.D. Tex. 2013) (Godbey, J.). Rather, the presumption that legal error occurred based on the incorrect wording of the standard may be rebutted either by a showing that the ALJ actually applied the correct legal standard, *see Morris v. Astrue*, No. 11-cv-631-Y, 2012 WL 4468185, *9 (N.D. Tex. 2012) (Cureton, M.J.), *adopted by* 2012 WL 4466144 (N.D. Tex. 2012), or that the error was harmless, *see Taylor*, 706 F.3d at 603. Substantial evidence supports the ALJ's finding in this case that Plaintiff's lumbar impairment was not a severe impairment even though the ALJ misstated the *Stone* severity standard.

8

In the case at bar, there is no evidence that Plaintiff's lumbar impairment rendered him unable to work. A consultative physician noted that while Plaintiff was treated for lumbar strain in 2008, there was no evidence of resulting functional limitations. Doc. 11-8 at 38. During a December 2011 consultative examination, Plaintiff complained of intermittent low back pain, but stated that he got relief with over-the-counter medication. Doc. 11-8 at 65. Moreover, Plaintiff exhibited no particular difficulty performing various functions during the exam, including heel/toe standing, bending, partially squatting, and getting on and off the exam table. Doc. 11-8 at 65. Plaintiff also had a negative straight leg raise test, a normal spinal exam, and a normal range of motion in all extremities. Doc. 11-8 at 65-66. On that record, substantial evidence supports the ALJ's finding that Plaintiff's lumbar impairments were not severe and did not result in functional limitations that would interfere with his ability to work.

Finally, Plaintiff's post-decision MRI does not warrant remand because although the MRI revealed evidence of lumbar facet syndrome, the mere mention of an impairment in the medical record does not establish that a claimant is disabled. See *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Rather, Plaintiff must show that he is so functionally impaired by his lumbar impairment that he is precluded from engaging in any substantial gainful activity for at least 12 months. *Id.* Although Plaintiff testified that he had lower back pain that caused him to have difficulty standing sometimes, he stated that he did not take any medication for it. Doc. 11-3 at 75-76. This is not sufficient to show that he is precluded from performing any substantial gainful activity. In sum, the ALJ's *Stone* error is harmless and does not warrant reversal. *Taylor*, 706 F.3d at 603.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 13, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 15, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on January 29, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE